*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0397p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

GREEN PARTY OF TENNESSEE; CONSTITUTION
PARTY OF TENNESSEE,

         *Plaintiffs-Appellees*,

    *v.*

TRE HARGETT, in his official capacity as
Tennessee Secretary of State; MARK GOINS,
in his official capacity as Coordinator of
Elections for the State of Tennessee,

         *Defendants-Appellants.*

No. 12-5271

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-692—William J. Haynes, Jr., District Judge.

Argued: July 25, 2012

Decided and Filed: November 30, 2012

Before: BOGGS, GILMAN, and DONALD, Circuit Judges

_____

## COUNSEL

**ARGUED:** Janet M. Kleinfelter, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. Alan P. Woodruff, Gray, Tennessee, for Appellees. **ON BRIEF:** Janet M. Kleinfelter, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. Alan P. Woodruff, Gray, Tennessee, for Appellees.

_____

## OPINION
_____

RONALD LEE GILMAN, Circuit Judge. This case involves a facial challenge to several aspects of Tennessee's statutory scheme for providing ballot access to minor political parties in state and federal elections. Two minor political parties that seek such

1

access—the Green Party of Tennessee and the Constitution Party of Tennessee—brought suit in federal district court in 2011, alleging that (1) the requirements to qualify for the Tennessee ballot as a "recognized minor party" are overly restrictive and thus impermissibly burden their First Amendment rights; (2) the requirements to qualify as a "recognized minor party" are unconstitutionally vague and constitute an improper delegation of legislative authority; (3) the provisions governing the order in which political parties are listed on the general-election ballot violate the Fourteenth Amendment's Equal Protection Clause; and (4) the prohibition on the use of the words "independent" and "nonpartisan" in minor-party names contravenes the First Amendment's guarantee of free speech.

In February 2012, the district court granted summary judgment in favor of the plaintiffs on all claims. The court enjoined the state of Tennessee from enforcing the challenged provisions, ordered that the plaintiffs be placed on the November 2012 general-election ballot, and directed the State to conduct a random public drawing to determine the order in which each party would appear on the ballot. Tennessee appealed, and then moved for a partial stay of the district court's judgment. We granted a stay only with respect to the random-public-drawing requirement. In the meantime, the Tennessee General Assembly amended some, but not all, of the invalidated provisions. For the reasons set forth below, we now **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this Opinion.

## I. BACKGROUND

Prior to 2011, Tennessee's election laws recognized just one category of political party on the State's ballot: the "statewide political party." To qualify for such recognition, a party needed to either (1) have achieved significant statewide success in the most recent gubernatorial election (by having at least one of its candidates for statewide office receive 5% or more of the number of votes cast), or (2) have demonstrated meaningful statewide support through a different process (by submitting at least 120 days before the primary election a petition, "signed by registered voters as

members of the party," totaling 2.5% or more of the number of votes cast in the most recent gubernatorial election). This system was challenged in an earlier federal lawsuit by several minor political parties, including the plaintiffs in this action, and the district court struck down the ballot-access laws as applied to the challengers. *See Libertarian Party of Tenn. v. Goins*, 793 F. Supp. 2d 1064 (M.D. Tenn. 2010).

The Tennessee General Assembly responded to this adverse ruling by amending the State's ballot-access laws in 2011. It changed the definition of "statewide political party" to cover only those parties that meet the 5%-of-the-vote threshold. *See* Tenn. Code Ann. § 2-1-104(a)(31). And it created a second category of political party, called a "recognized minor party," for those parties that do not meet the 5% threshold but satisfy the petition requirements, which were left essentially unchanged from the prior version of the statute. *See id.* § 2-1-104(a)(24). The complaint in this case focuses mainly on those requirements, as well as on a few other features of the 2011 amendments.

### A.        Relevant 2011 amendments

A "recognized minor party" is defined by the 2011 amendments as

> any group or association that has successfully petitioned by filing with the coordinator of elections a petition which shall conform to requirements established by the coordinator of elections, but which must at a minimum bear the signatures of registered voters equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor, and on each page of the petition, state its purpose, state its name, and contain the names of registered voters from a single county[.]

Tenn. Code Ann. § 2-1-104(a)(24). This 2.5% signature requirement comes directly from the previously invalidated legislation, as does the deadline for when a party must submit its petition. That deadline, which is set forth in a separate provision, is 119 days before the date of the August primary election, *see id.* §§ 2-13-107(a) (2011) (amended 2012), 2-5-101(a)(1), a time period effectively indistinguishable from the prior 120-day filing deadline. Under these requirements, a minor party would have had to submit a

petition containing at least 40,039 valid signatures by April 5, 2012 in order to qualify for Tennessee's November 2012 general-election ballot.

In addition to transplanting the petition requirements from statewide political parties to recognized minor parties, the 2011 amendments make clear that minor parties must nominate their candidates for governor, Tennessee General Assembly, United States senator, and United States representative by means of a primary election, to be held in early August of the election year. *Id.* § 2-13-202 (2011) (amended 2012). The candidates for these offices must also submit a nominating petition that "meets the statutory requirements to be declared a recognized minor party," *id.* § 2-13-107(c) (2011) (amended 2012), meaning that the petition must satisfy the same 2.5% signature provision and 119-day filing deadline described above. But the candidates for all other offices (including presidential candidates) may be nominated by any method authorized under each particular party's own internal rules. *Id.* § 2-13-203(a)(1).

Along with these ballot-access laws, the plaintiffs challenge two other statutory provisions created by the 2011 amendments. The first prescribes the order in which each party is to be listed on the general-election ballot (hereinafter referred to as the "party-order provision"). This provision reads: "[O]n general election ballots, the name of each political party having nominees on the ballot shall be listed in the following order: majority party, minority party, and recognized minor party, if any." *Id.* § 2-5-208(d)(1). "Majority party" and "minority party," in turn, refer to the parties whose members hold the largest and second largest number of seats in the combined houses of the Tennessee General Assembly. *Id.* § 2-1-104(a)(11), (12).

The final challenged provision imposes a restriction on the words that a recognized minor party may use in its name on the ballot. This provision mandates that the name "shall not include the word 'independent' or 'nonpartisan,'" and that "[t]he coordinator of elections shall redact any portion of a minor party name that violates this section." *Id.* § 2-13-107(d). The 2011 legislation went into effect in May of that year.

**B.    Procedural history**

In July 2011, the present lawsuit was filed.  The complaint attacked several of the new provisions on their face.  In particular, the plaintiffs alleged that (1) the requirements to qualify as a "recognized minor party" in Tennessee are overly restrictive and thus effectively deny them access to the ballot; (2) the requirements to qualify as a "recognized minor party" are unconstitutionally vague and constitute an improper delegation of legislative authority; (3) the party-order provision violates the Equal Protection Clause; and (4) the prohibition on the use of the words "independent" and "nonpartisan" in minor-party names is barred by the First Amendment.

In granting summary judgment for the plaintiffs, the district court held in February 2012 that all the challenged provisions were unconstitutional on their face, with the exception of the 2.5% signature requirement, which the court acknowledged is a facially "reasonable state regulation."  *Green Party of Tenn. v. Hargett*, --- F. Supp. 2d ---, 2012 WL 379774, at *42 (M.D. Tenn. Feb. 3, 2012).  But the court determined that empirical evidence submitted by the plaintiffs' expert, which discussed the costs and difficulties inherent in collecting signatures as a general matter, essentially "convert[ed] [the] challenge into . . . an 'as applied' challenge."  *Id.* at *43.  Having reached this conclusion, the court then held that the signature requirement, as applied to the plaintiffs, substantially burdened their First Amendment rights and could not be justified by a compelling state interest.  The court further concluded that the form of the nominating petition for minor parties unconstitutionally compelled the disclosure of the signatory's party membership.

To remedy these violations, the court "deem[ed that] any deadline in excess of sixty (60) days prior to the August primary for the filing of petitions for recognition as a political party is unenforceable"; enjoined "enforcement of the state statutes requiring Plaintiffs to select their nominees by primary, awarding ballot preference to the majority party[,] and [prohibiting] the use of 'Independent or Nonpartisan' in a political party's name"; and required the state to "revise the 'Nominating Petition' to delete the reference that the signatory is a member of the party."  *Id.* at *56.  The court also determined that

the Green Party of Tennessee's past electoral support of almost 20,000 votes and the Constitution Party of Tennessee's collection of nearly 10,000 signatures were sufficiently strong showings of support to entitle them to "recognition as political parties and to have their parties' names next to their candidates on the general election ballot" in November 2012. *Id.* Finally, the court directed the State to conduct a random public drawing to determine the order in which each party would appear on the November ballot.

The State timely appealed in order to challenge all of the district court's rulings other than the part addressing the compelled disclosure of party membership on the nominating petition. In March 2012, the State sought a partial stay of the judgment pending appeal. The State moved to stay (1) the requirement that it place the plaintiffs' names next to their respective candidates on the November 2012 ballot, and (2) the requirement that it conduct a random public drawing to determine the position of the parties on the ballot. When the district court denied the motion later that same month, the State filed a motion for a partial stay with this court. We granted the stay request in early August 2012 only with respect to the random-public-drawing requirement.

**C.        2012 amendments**

As in 2011, the continuing federal litigation spurred the State to further amend its ballot-access laws. In April 2012, the Tennessee General Assembly enacted Public Chapter 955, which provides in relevant part that "[r]ecognized minor parties may nominate their candidates for any office by any method authorized under the rules of the party or by primary election under this title." 2012 Tenn. Pub. Acts Ch. 955, § 6 (amending Tenn. Code Ann. § 2-13-203(a)). This amendment, in other words, creates an alternative route for qualifying as a candidate for a recognized minor party. Whereas the 2011 legislation required minor parties to select their nominees for certain offices by means of a primary election, the 2012 legislation allows minor parties to select their nominees for all offices according to their own rules.

This new route also relaxes some of the procedural requirements: a party that chooses the "party rules" option is permitted to file its petition—which must still meet

the 2.5% signature provision—as late as 90 days before the November general election (as opposed to 119 days before the August primary election). *See id.* at § 1 (amending Tenn. Code Ann. § 2-13-107(a)). The party's candidates are freed from this petition process altogether. *See id.* at § 2 (amending Tenn. Code Ann. § 2-13-107(c)). Should a minor party nevertheless prefer to nominate its candidates through a primary election, the statute continues to operate as it did before, meaning that the party and its candidates must each file a petition meeting the 2.5% signature provision and the 119-day filing deadline.

These changes went into effect in May 2012. No other provisions that the district court invalidated were amended.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Tennessee's ballot-access laws

The plaintiffs' primary contention in the district court was that Tennessee had set such a high bar for qualifying as a "recognized minor party" that it had effectively denied them access to the ballot. More specifically, they argued that the party-primary requirement, the 119-day filing deadline, and the 2.5% signature provision combined to impermissibly burden their First Amendment rights. But, as noted above, the Tennessee

General Assembly has since amended these requirements to provide an alternative (and less restrictive) route for non-presidential candidates of a minor party to appear on the general-election ballot. This development raises the threshold question whether the plaintiffs' primary claim is now moot, thereby depriving us of jurisdiction to consider the claim's merit.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation marks omitted). The mootness doctrine is a critical component of this jurisdictional limitation. It "requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). "Legislative repeal or amendment of a challenged statute while a case is pending on appeal usually eliminates this requisite case-or-controversy because a statute must be analyzed by the appellate court in its present form." *Ky. Right to Life v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997).

But a case or controversy does not automatically "cease to exist by mere virtue of a change in the applicable law," *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006) (internal quotation marks omitted), because, "if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect," *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). The key question is therefore whether the challenged legislation "has been sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided." *Id.* at 662 n.3 (internal quotation marks omitted). Put differently, the question is whether the new statute "operates in the same fundamental way" as the old statute. *Cam I*, 460 F.3d at 720 (internal quotation marks omitted).

When the plaintiffs brought this lawsuit in July 2011, Tennessee provided only one path for minor political parties to gain access to the general-election ballot for certain high-level offices: the parties had to nominate their candidates through a primary

election.  And to do that, both the party and each individual candidate for one of the specified offices had to submit a petition meeting the 2.5% signature provision and the 119-day filing deadline.  If a party could not muster enough signatures by this deadline, which fell in early April of the election year, then it would not be recognized as a minor party.  Its name would therefore not appear on either the August primary-election ballot or the November general-election ballot.  By the same token, if a minor-party candidate for one of the specified offices failed to meet the petition-filing requirements, then the candidate's name would appear on the general-election ballot simply as an independent, not as a member of a political party.

The 2012 legislative amendments substantially changed this scheme.  Under the new rules, minor parties may still avail themselves of the party-primary route to select their nominees.  Should they do so, they (and their candidates) must comply with the same requirements as before.  But minor parties are now given a second option:  they are permitted to nominate their candidates for any office by any method authorized under the party's own internal rules.  Should a party choose this path, then the party may wait until 90 days before the November general election to submit a petition meeting the 2.5% signature provision.  And the candidates themselves are no longer required to submit such a petition; they need comply only with the party's own nominating rules.

The plaintiffs' ballot-access challenge boils down to two separate claims: (1) that the party-primary requirement impermissibly burdened their right to select their own nominees; and (2) that the party-primary requirement, the 119-day filing deadline, and the 2.5% signature provision combined to deny them access to the ballot.  Because Tennessee now gives minor political parties the option to select their nominees for office under their own internal rules, the first of these claims is moot.  The plaintiffs' contention to the contrary—that the issue is not moot because the Tennessee General Assembly could "revers[e] itself at some time in the future and reinstat[e] a mandatory primary for minor parties"—is pure conjecture.  There is simply no evidence in the record to suggest that this scenario is likely to occur.

Whether the second claim is also moot is a different question.  The district court held that the 2.5% signature provision was unconstitutional both in combination with the 119-day filing deadline and standing alone.  *Green Party*, 2012 WL 379774, at *3, *43. That provision—which is still in effect today—was therefore a core component of the "controversy" below.  Because at least this component of Tennessee's ballot-access laws remains unconstitutional under the district court's analysis, the plaintiffs' second claim is not moot.  *See Cam I*, 460 F.3d at 720 ("[W]here the changes in the law arguably do not remove the harm or threatened harm underlying the dispute, the case remains alive and suitable for judicial determination." (internal quotation marks omitted)).  Moreover, the fact that the November 2012 election has now taken place does not moot this controversy because the issue falls comfortably under the "capable of repetition, yet evading review" exception to the mootness doctrine.  *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584-85 (6th Cir. 2006) ("Considering the 'somewhat relaxed' repetition standard employed in election cases, this issue easily satisfies the 'capable of repetition, yet evading review' exception and is not moot." (citation omitted)).

But that does not mean that the effect of the new legislation should be determined by this court in the first instance.  When "a change in law does not extinguish the controversy, the preferred procedure is for the court of appeals to remand the case to the district court for reconsideration of the case under the amended law." *Hadix v. Johnson*, 144 F.3d 925, 934 (6th Cir. 1998), *overruled on other grounds by Miller v. French*, 530 U.S. 327 (2000).  "We normally pursue this course of action so that the district court may have an opportunity to pass judgment on the changed circumstances." *Id.* at 935 (brackets and internal quotation marks omitted).

In our view, the district court should be given this opportunity here.  The court should be able to evaluate the various components of Tennessee's election laws as part of the larger framework for providing ballot access to minor political parties.  *See Libertarian Party of Ohio*, 462 F.3d at 586 ("Our inquiry is not whether each law individually creates an impermissible burden but rather whether the combined effect of the applicable election regulations creates an unconstitutional burden on First

Amendment rights."). That framework has fundamentally changed since the district court decided the case because the party-primary requirement is no longer mandatory, the petition-filing deadline has moved from seven months before the general election to only three months before, and minor-party candidates are no longer required to submit nominating petitions meeting the 2.5% signature provision and 119-day filing deadline unless their party chooses to hold a primary election.

These changes are significant enough to warrant remanding the ballot-access claim to the district court for reconsideration. As part of its reconsideration, however, the district court must take into account that the 2.5% signature requirement, standing alone, is not unconstitutional on its face. *See, e.g.*, *Am. Party of Texas v. White*, 415 U.S. 767, 789 (1974) ("Demanding signatures equal in number to 3% or 5% of the vote in the last election is not invalid on its face."); *Jenness v. Fortson*, 403 U.S. 431 (1971) (upholding a Georgia law requiring independent and minor-party candidates to secure supporting signatures amounting to at least 5% of the total voters from the last election).

### C.     Improper-delegation and facial-vagueness claims

The plaintiffs' next allegation is that the definition of a "recognized political party," as set forth in Tenn. Code Ann. § 2-1-104(a)(24), constitutes an impermissible delegation of legislative authority and is unconstitutionally vague. This allegation focuses on the requirement that a minor party

> fil[e] with the coordinator of elections a petition which shall conform to requirements established by the coordinator of elections, but which must at a minimum bear the signatures of registered voters equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor.

*Id.* The question is whether this statutory provision permits the coordinator of elections to increase the required number of signatures or to impose other substantive requirements on minor-party petitions, or whether the provision limits the authority of the coordinator of elections to creating regulations governing only the ballot's form.

Taking the vagueness claim first, a statute will be struck down as facially vague only if the plaintiff has "demonstrate[d] that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982). The purpose of this doctrine is to ensure that both those who enforce a statute and those who must comply with it "know what is prohibited," *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); it is not "to convert into a constitutional dilemma the practical difficulties" of crafting a law that is "general enough to take into account a variety of human conduct" yet specific enough "to provide fair warning," *Colten v. Kentucky*, 407 U.S. 104, 110 (1972). Moreover, federal courts must construe challenged state statutes, whenever possible, so as "to avoid constitutional difficulty." *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006) (internal quotation marks omitted).

Heeding that obligation here, and mindful of the purposes underlying the vagueness doctrine, we conclude that Tenn. Code Ann. § 2-1-104(a)(24) is not impermissibly vague. The district court determined that, aside from the 2.5% minimum signature provision, the statute grants the coordinator of elections "unfettered discretion to establish party qualifying petition requirements that the legislature failed to establish, rendering this statute unconstitutionally vague." *Green Party*, 2012 WL 379774, at *55. But a fair reading of the statute does not *compel* an interpretation that grants such unfettered discretion. The statute, although certainly not a model of clarity, can reasonably be read as giving the coordinator of elections the discretion to create requirements addressing only the petition's form, not to create substantive requirements affecting, for example, the time allowed for collecting signatures or the number of signatures required on the petition. And because the statute can reasonably be construed in this way (and *is* construed in this way by the State, as noted in its brief), we must adopt that construction. *See Chapman v. United States*, 500 U.S. 453, 464 (1991) ("Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." (brackets and internal quotation marks omitted)). The statute is therefore not unconstitutionally vague on its face.

Nor does the statute constitute an impermissible delegation of legislative authority, for similar reasons. Article I, § 4, of the U.S. Constitution provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." The statute at issue in this case can reasonably be interpreted to comply with this provision. Under such an interpretation, the Tennessee General Assembly prescribed the key substantive regulations governing minor-party nominating petitions, including the 2.5% signature provision and 119-day filing deadline, while expressly delegating to the coordinator of elections the administrative task of establishing the petition's form. Because this interpretation is both reasonable and constitutional, we conclude that the district court erred in invalidating Tenn. Code Ann. § 2-1-104(a)(24).

## D.        Party-order provision

The plaintiffs also challenged as facially unconstitutional Tennessee's provision that "on general election ballots, the name of each political party having nominees on the ballot shall be listed in the following order: majority party, minority party, and recognized minor party, if any." *Id.* § 2-5-208(d)(1). In striking down this provision, the district court concluded that the State's "preferential placement of the majority party candidates on election ballots provides an impermissible 'voting cue' that violates Plaintiffs' First Amendment rights as well as the First Amendment rights of Tennessee voters." *Green Party*, 2012 WL 379774, at *52. The court based its conclusion largely on two empirical studies, one of which found "'that ballot order effects, particularly in relatively low salience elections, are both statistically significant and large enough in magnitude to alter the outcomes of elections.'" *Id.* (quoting Laura Miller, *Election by Lottery: Ballot Order, Equal Protection, and the Irrational Voter*, 13 N.Y.U. J. Legis. & Pub. Pol'y 373, 405 (2010)).

On appeal, the State stresses the facial nature of this challenge. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Courts do not usually grant this "strong medicine . . . because such efforts do not seek to invalidate laws in concrete, factual settings"—the typical course of constitutional litigation—"but to leave nothing standing." *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 960 (6th Cir. 2009) (internal quotation marks omitted). Facial challenges, the Supreme Court has noted, are disfavored for several other, somewhat overlapping reasons: they "often rest on speculation" and thus "raise the risk of premature interpretation," they "run contrary to the fundamental principle of judicial restraint," and they "threaten to short circuit the democratic process." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (internal quotation marks omitted).

Viewed through the prism of these background principles, the plaintiffs' facial challenge to Tenn. Code Ann. § 2-5-208(d)(1) falls short. As the State points out, "[t]he effect of ballot placement on voting is a matter of fact, and virtually every court that has found prejudice resulting from preferential ballot placement has done so based upon significant evidence demonstrating such prejudice in[]elections in that state." The record in this case, by contrast, contains no comparable evidence. Because the plaintiffs brought this case as a facial challenge, "we have no evidentiary record against which to assess their assertions that voters will be confused" or influenced by the position of the names on the ballot. *See Wash. State Grange*, 552 U.S. at 455. So we are left to speculate about the form of the ballot, upon which the claim of positional bias hinges. And "[a]s long as we are speculating," we must, out of deference to the principle of federalism, "ask whether the ballot could conceivably be printed in such a way as to eliminate the possibility of widespread" positional bias "and with it the perceived threat to the First Amendment." *See id.* at 455-56.

We need not strain to conceive of such a ballot. If one of the studies cited by the district court is to be believed, Tennessee might in fact already use a ballot free of any widespread positional bias. The State presumptively uses what is known as a "party block" ballot form for general elections, meaning that "all of the candidates for a party are listed in a single column." Miller, 13 N.Y.U. J. Legis. & Pub. Pol'y at 388 & n.77; *see* Tenn. Code Ann. § 2-5-206(b)(2) (mandating the "party block" ballot form for

general elections, subject to certain exceptions).  This form is distinct from an "office block" ballot form, "in which candidates are listed vertically under the heading of the office they seek."  Miller, 13 N.Y.U. J. Legis. & Pub. Pol'y at 388.  The study cited by the district court analyzed elections "in states that use the 'office block' ballot form in general elections," but not elections in states that use the "party block" form.  *Id.*  As for the "party block" states, the study's author hypothesized that, "[g]iven the salience of the party label with this type of ballot, one should expect that positional effects would be minimal."  *Id.*  Consequently, the evidence on which the district court relied provided no basis to hold that Tenn. Code Ann. § 2-5-208(d)(1) is unconstitutional on its face.

While the State's appeal was pending, however, the plaintiffs received our permission to file an exhibit of a sample general-election ballot from Washington County that uses the office-block format.  But this exhibit is not sufficient to alter our conclusion that the district court wrongly held that the party-order provision is facially unconstitutional.  The significance, if any, of Washington County's general-election ballot format or any other Tennessee ballots that might use the office-block format is not for us to decide in the first instance, especially because such a format appears to conflict with the presumptive "party block" ballot specified in Tenn. Code Ann. § 2-5-206(b)(2).  *See Taft Broad. Co. v. United States*, 929 F.2d 240, 243-44 (6th Cir. 1991) (listing cases stating the general rule that issues not litigated in the trial court are not appropriate for appellate consideration).  Rather, the district court is the best forum in which to further develop the factual record as necessary.

**E.      Restrictions on minor-party names**

The plaintiffs' final challenge is to Tennessee's prohibition on minor parties using the words "independent" or "nonpartisan" in their names on the ballot.  *See* Tenn. Code Ann. § 2-13-107(d).  Before we can consider the merits of this claim, however, we must determine whether we have jurisdiction to decide the issue.

As previously mentioned, the United States Constitution limits federal-court jurisdiction to actual cases or controversies.  The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement," *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992), because it prevents the installation of "the federal courts as virtually continuing monitors of the wisdom and soundness" of the elected branches of government, *Laird v. Tatum*, 408 U.S. 1, 15 (1972).  Properly applied, the standing doctrine "assure[s] that the legal questions presented to the court will not be resolved in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic apprehension of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

To this end, standing requires a plaintiff to have suffered an "injury in fact" that is (1) "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) "fairly traceable to the challenged action of the defendant," and (3) likely to "be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (alterations and internal quotation marks omitted).  These three elements, the Supreme Court has repeatedly explained, constitute the "irreducible constitutional minimum" for standing. *See id.*

The key question in the present case is whether the plaintiffs have suffered an injury in fact that satisfies the first element of *Lujan*.  As the district court noted, the plaintiffs concede that they do not intend to use either prohibited word in their names on the ballot.  Yet they maintain that they have suffered an actual injury because "the mere existence of [the name regulation] has an extraordinary *chilling effect* on [their] choice of the name by which they wish to be known and represented on the ballot." (Emphasis in original.)  This supposed chilling effect derives from the plaintiffs' general observation that, "[i]f a party undertook a petition drive in which they included the words 'independent' or 'nonpartisan' in their name, they risk being denied ballot inclusion."

As an initial matter, the plaintiffs overstate the effect of the statutory provision at issue.  A party that includes a prohibited word as part of its name will not be denied ballot inclusion altogether; rather, the prohibited word will simply be redacted from the party's name on the ballot. *See* Tenn. Code Ann. § 2-13-107(d).  But this point aside,

the more fundamental problem with the plaintiffs' argument is that it completely misunderstands the injury-in-fact requirement. "A threatened injury must be certainly impending to constitute injury in fact," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks omitted), and it "must affect the plaintiff in a personal and individual way," *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011) (internal quotation marks omitted). The injury asserted by the plaintiffs in this case—that *they* have been impacted because the speech of *hypothetical others* might be chilled—does not meet this standard.

Perhaps recognizing this, the plaintiffs argue that they have suffered a personal and "certainly impending" injury because the statute "makes it a certainty that [they] would be denied the right to use the words 'independent' or 'nonpartisan' in their name" if they sought to do so. (Emphasis removed.) But the fact that the plaintiffs would be denied an asserted right if they chose to exercise it only begs the question whether they will in fact choose to exercise that right. With respect to that question, the answer is clearly "no" in light of the plaintiffs' concession that they do not intend to include either prohibited word in their names on the ballot. The statute therefore will not injure them in a way that is both "particularized" and "imminent." *See Lujan*, 504 U.S. at 560.

One can of course conceive of a future scenario in which the plaintiffs decide to change their names to include one of the prohibited words. But the standing inquiry is not an "exercise in the conceivable"; it "requires . . . a factual showing of perceptible harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (alteration in original) (internal quotation marks omitted). That showing is wholly absent here.

The district court acknowledged as much, but nevertheless determined that the plaintiffs had standing by analyzing the question from a higher level of generality. Pointing to a number of cases in which plaintiffs were found to have standing to challenge petition-filing deadlines and signature requirements before having actually filed a petition themselves, the court concluded that the plaintiffs in this case have standing to challenge the statute in question because it "clearly impacts a minor political party's ballot access" and, "in ballot access controversies, all relevant statutes impacting

ballot access of minority political parties must be evaluated collectively." *Green Party*, 2012 WL 379774, at \*29.

This ruling is erroneous.  Each of the cases relied on by the district court involved challenges to filing deadlines and signature requirements that the plaintiffs were inevitably going to have to comply with in order to gain ballot access.  *See, e.g.*, *Storer v. Brown*, 415 U.S. 724 (1974); *Williams v. Rhodes*, 393 U.S. 23 (1968); *Stevenson v. State Bd. of Elections*, 794 F.2d 1176 (7th Cir. 1986).  Not one of these cases, however, holds that a plaintiff with standing to challenge certain requirements that affect its ability to get on the ballot also has standing to challenge other requirements that do *not* so affect its ability.  We therefore conclude that the plaintiffs' "prohibited names" challenge must be dismissed on remand for lack of subject-matter jurisdiction.

## III.  CONCLUSION

For all the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this Opinion.