RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

KENJOH OUTDOOR, LLC,

　　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

JACK MARCHBANKS, Director, Ohio Department of
Transportation; NATHAN FLING, Supervisor, Ohio
Department of Transportation,

　　　　　　　　　　　*Defendants-Appellees*.

No. 20-4026

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Dayton.
No. 3:19-cv-00328—Thomas M. Rose, District Judge.

Argued: October 19, 2021

Decided and Filed: January 11, 2022

Before: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** A. Richard M. Blaiklock, LEWIS WAGNER, LLP, Indianapolis, Indiana, for
Appellant. Mathura J. Sridharan, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus,
Ohio, for Appellees. **ON BRIEF:** A. Richard M. Blaiklock, Charles R. Whybrew, LEWIS
WAGNER, LLP, Indianapolis, Indiana, Thomas H. Fusonie, Kara M. Mundy, VORYS, SATER,
SEYMOUR AND PEASE, LLP, Columbus, Ohio, for Appellant. Benjamin M. Flowers,
William J. Cole, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for
Appellees.

_____

**OPINION**

_____

NALBANDIAN, Circuit Judge.  This is a case about Ohio's billboard regulations.  In Ohio, to place an advertising billboard on a highway, you must apply for a permit from the Ohio Department of Transportation (ODOT).  But under one of its regulations, known as the compliance rule, ODOT will not process a permit application if the applicant has outstanding fees, changes his billboard without prior approval from ODOT, or maintains an illegal advertising billboard.

This controversy began when ODOT put Kenjoh's billboard permits on hold under the compliance rule, alleging that Kenjoh was maintaining an illegal billboard.  In turn, Kenjoh sued ODOT, asserting that the compliance rule is an unconstitutional prior restraint.  It asked for a permanent injunction and damages under 42 U.S.C. § 1983.  The district court dismissed both claims, and Kenjoh appealed.  But while the case was pending on appeal, the Ohio legislature amended a key definition in the relevant statute.  This changes how the regulation applies.  So we **VACATE** and **REMAND** the injunction claim to the district court to consider the constitutionality of the regulation given the amendment.  But as to damages, we **AFFIRM** the grant of qualified immunity despite the amendment.  That's because we look at the law as it existed at the time of the official action.

**I.**

We begin by laying out the background in three parts.  First, we explain the relevant regulation.  Then we briefly recount the facts that gave rise to this dispute.  And finally, the procedural history.

**A.**

Ohio heavily regulates billboards.  And ODOT enforces these regulations.  *See* Ohio Rev. Code § 5516.03.  Relevant here are a regulation and a definition that governs its scope.

*The regulation.*    Generally, a person needs a permit from ODOT before placing an "advertising device" on the highway.  Ohio Rev. Code § 5516.10.  But ODOT will not process permit applications if the applicant falls into one of three categories.[1]  *See* Ohio Admin. Code § 5501:2-2-05(D).  First, if he has outstanding fees.  *Id.*  Second, if he modifies an advertising device without prior approval.  *Id.*  And third, if he maintains an illegal device.  *Id.*  We call this regulation the compliance rule.

Relevant here is the third category of the compliance rule.  Again, this allows ODOT to refuse to process any application if the applicant maintains an illegal device.  And ODOT defines "illegal sign"[2] as "an *advertising device* with advertising copy which was erected or is maintained in violation of federal, state, or local law or ordinance."  Ohio Admin. Code § 5501:2-2-01(L) (emphasis added).  So the definition of illegal device is rather intuitive—it is a device that violates a law or regulation.  Usually, these signs are subject to a removal procedure. Ohio Admin. Code § 5501:2-2-07.  But the failure to remove them also implicates the compliance rule.  Importantly, the definition of "illegal sign" incorporates the definition of "advertising device."  So if the applicant maintains an illegal adverting device and applies for a permit to put up another advertising device, ODOT will not process that permit.

The key definition, then, is that of "advertising device."  Ohio Rev. Code § 5516.01(A) (2007).  After all, the compliance rule incorporates it in two ways.  First, the compliance rule has its force in authorizing ODOT to withhold permits, and these permits are generally required before a person can place an "advertising device" on the highway.  And second, "illegal device" incorporates the definition of "advertising device."  So before ODOT refuses to process a permit, it must determine that the illegal device is an advertising device.

---

[1]In full, the compliance rule states that "No application will be processed for a new permit when the applicant has any outstanding delinquent bills, including outstanding renewal fees for other permits, has modified a device prior to receiving approval from the advertising device control section, or has erected or is maintaining an illegal device."  Ohio Admin. Code § 5501:2-2-05(D).

[2]Although this definition is of "illegal sign," not "illegal device," "sign" and "device" are used interchangeably.  As explained below, the definition of "advertising device" includes any "outdoor sign."  *See* Ohio Rev. Code § 5516.01(A).

*The definition*. While this case was on appeal, the legislature amended the definition of "advertising device." *See* Act of Mar. 25, 2021, sec. 101.02, 2021 Ohio Laws 5 (H.B. 74). Before, the definition relied on the content of the sign. So, an "advertising device" was any outdoor sign, including billboards, "designed, intended, or used to advertise."[3] Ohio Rev. Code § 5516.01(A) (2007). And this was the definition that the district court analyzed. *Kenjoh Outdoor, LLC v. Marchbanks*, 485 F. Supp. 3d 947, 952 (S.D. Ohio 2020). Now? The definition relies on the status of the person operating the sign. And so under the current statute, an "advertising device" is any sign "owned or operated by a person or entity that earns compensation for the placement of a message on it."[4] Ohio Rev. Code § 5516.01(A). Thus in one sense, the definition is broader. It is not limited to advertisements. But in another sense, it is narrower. It only covers those who are paid for the billboard. This means that even an advertising billboard is not covered if the owner is not paid.

Taking the two together, we are left with this: Before the amendment, a person needed a permit from ODOT to erect a billboard that was "designed, intended, or used to advertise." But if he falls into one of the categories of the compliance rule, then ODOT would not process that application. If, for example, ODOT determined that the applicant has a billboard that violates the law, the compliance rule will apply only if that billboard was an advertising device. Now, a person needs a permit if he will be paid for placing a message on the billboard, regardless of the message. And again, the application will not be processed if he falls into one of the three categories. The legislature did not amend the compliance rule itself. But in amending "advertising device," it amended the compliance rule's scope.

---

[3]The text of the statutory definition before the amendment stated that "'[a]dvertising device' includes any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or any other contrivance designed, intended, or used to advertise or to give information in the nature of advertising, or any part thereof, the advertising or informative contents of which are visible from the main traveled way of any highway on the interstate system or primary system in this state." Ohio Rev. Code § 5516.01(A) (2007).

[4]And, after the amendment, the statute provides that "'[a]dvertising device' includes any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or any other contrivance that is owned or operated by a person or entity that earns compensation for the placement of a message on it and is visible from the main traveled way of any highway on the interstate system or primary system in this state." Ohio Rev. Code § 5516.01(A).

**B.**

With that in mind, we turn to the facts of Kenjoh's case. In 2017, Kenjoh decided to put up a billboard in Sidney, Ohio. This billboard was to have two sides: one facing the highway, the other a state road. Mark Jones, an ODOT employee, told Kenjoh that it did not need a permit. So Kenjoh built the billboard without one and began renting it out.

But despite its earlier assurances, the state determined that this billboard violated an ODOT regulation prohibiting a billboard within 500 feet of an interchange. *See* Ohio Admin. Code § 5501:2-2-02(A)(3)(a)(ii). So because Kenjoh's billboard fell within this regulation, the state said that Kenjoh was maintaining an "illegal device."

Nathan Fling, an ODOT supervisor, sent Kenjoh a notice. The notice gave Kenjoh 30 days to remove the illegal billboard. And if it did not, ODOT would fine it up to $100 a day and put its other permit applications on hold. Despite the warning, Kenjoh did not remove the billboard. So ODOT, acting under the compliance rule, put Kenjoh's other applications on hold. This forced Kenjoh to reconsider and remove the offending billboard. But since it lost revenue when its applications were stalled, it sued.

**C.**

Kenjoh asked for an injunction and damages. For its injunctive claim, it asserted only one ground for relief—that the compliance rule is a prior restraint that violates the First Amendment. For its damages claim, Kenjoh sued Nathan Fling in his individual capacity under 42 U.S.C. § 1983. The Defendants moved to dismiss. They argued that the compliance rule was not an unconstitutional prior restraint, and that Fling is entitled to qualified immunity.

The district court agreed. It found that the compliance rule regulated only commercial speech. And it concluded that the prior restraint doctrine does not apply to commercial speech. But the court did not end its analysis there. It analyzed the regulation as commercial speech using intermediate scrutiny and held that the compliance rule was constitutional. Finally, the court granted Fling qualified immunity. So the district court dismissed the case. And Kenjoh appealed.

**II.**

We review the district court's dismissal for failure to state a claim de novo.  *See Boxill v. O'Grady*, 935 F.3d 510, 517 (6th Cir. 2019).  We allow claims to survive "only if they 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  And a claim is facially plausible if it allows courts "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**III.**

We begin with Kenjoh's claim for injunctive relief.  Kenjoh's only theory is that the compliance rule is a prior restraint.  But it doesn't make much sense to analyze the compliance rule as an alleged prior restraint in a vacuum.  As we noted above, the compliance rule, on its face, incorporates two relevant definitions that are vital to this case—"advertising device" and "illegal sign."  Indeed, it's the definition of "advertising device" that originally made this case about commercial speech.  And, in any event, that's the way the parties have argued the matter.  But Ohio changed the definition of "advertising device," making it about the speaker and not about the content of the speech.  This change, in turn, altered the scope of the compliance rule.

So for Kenjoh's claim for injunctive relief, this presents us with two questions.  First, do we still have a live controversy?  And second, if we do, should we resolve the case or remand for the district court to consider in the first instance how the new definition affects the regulatory scheme and whether it remains constitutional?

**A.**

First, mootness.  If the legislature amends a statute relevant to a case before us, our first task is to consider if the case is moot.  *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 822 (6th Cir. 2012).  We do this because courts apply the law as it exists at the time of the decision. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 980 (6th Cir. 2012).  And a change in the law tends to "eliminate the requisite case-or-controversy." *Hargett*, 700 F.3d at 822.  But not every amendment automatically moots a claim.  *Id.* at 822-23.  Otherwise, defendants could

moot a case by amending the statute in "some insignificant respect." *Id.* at 823. So in some cases an amendment will moot a claim, and in other cases it will not.

How then is a court to decide? We look at both versions of the law and ask if the new statute "operates in the same fundamental ways" as the old one. *Id.* The question is about how much the legislature changed the statute. If the new statute presents a "different controversy," the case is moot. *Id.* But if the new statute imposes the same burdens on the plaintiff, the case isn't. *See Sable Commc'ns of California, Inc. v. Fed. Commc'n Comm'n*, 492 U.S. 115, 123 n.5 (1989) ("Since the substantive prohibitions under this amendment remain the same, this case is not moot."). It boils down to this: If the changes "do not remove the harm" to the plaintiff, "the case remains alive and suitable for judicial determination." *Hargett*, 700 F.3d at 824 (quoting *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 460 F.3d 717, 720 (2006)).

Applying these principles, Kenjoh's claim is not moot. Kenjoh challenged the compliance rule as an unconstitutional prior restraint. That challenge is still valid. After all, the amendment here did not change the compliance rule itself. Rather, the rule operates in the same fundamental ways. ODOT can still deny a permit under the compliance rule. Ohio Admin. Code § 5501:2-2-05(D). The amendment only changed the set of signs that the rule applies to. The rule now extends to any billboard where the owner or operator "earns compensation" for the message on it. Ohio Rev. Code § 5516.01(A). But Kenjoh is still burdened to the same extent. After all, its business model relies on getting paid for placing advertisements on billboards. And so, because we face the same controversy decided by the district court, Kenjoh's claim is not moot.

**B.**

But even though the claim is not moot, it does not mean we decide "the effect of the new legislation . . . in the first instance." *Hargett*, 700 F.3d at 824. Instead, the "preferred procedure" is for us to remand so that the district court can reconsider the case under the amended law. *Id.* We do this to allow the district court "an opportunity to pass judgment on the changed circumstances." *Id.* (quoting *Hadix v. Johnson*, 144 F.3d 925, 935 (6th Cir. 1998)).

In *Hargett*, for example, we remanded the case to the district court after the legislature amended the law while the case was on appeal.  *Id.*  We did not decide how the amendments changed the overall framework of the law.  *Id.*  And we left it to the district court to consider in the first instance.  *Id.*

So too here.  The district court should be given an opportunity to evaluate how the new definition of "advertising device" operates.  In its original opinion, the district court found that the compliance rule regulates only commercial speech and held that prior restraint does not apply to commercial speech.  But now, the compliance rule is not limited to commercial speech.  As explained above, it applies to any speech, commercial or not, if the person responsible for it is compensated for the message.  *See* Ohio Rev. Code § 5516.01(A).  This makes the compliance rule a content-neutral regulation, but one that turns on the identity of the speaker.  And so the district court should consider the effects of these changes in the first instance.

## IV.

Now we turn to Kenjoh's claim for damages under 42 U.S.C. § 1983.[5]  Here, Kenjoh cannot show it was clearly established that prior restraint applied to commercial speech.  If anything, our precedent seems to go the other way.  So the district court properly granted Nathan Fling qualified immunity.

Government officials are entitled to qualified immunity unless (1) they violate a constitutional right that (2) was "clearly established."  *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  The plaintiff has the burden of meeting this test.  *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).  And we can tackle the test in either order.  *Pearson v. Callahan*, 555 U.S. 223, 236, 241-42 (2009).  If one prong is decisive, we need not to consider the other.  *Id.*  And here we skip to the second prong.

---

[5]Unlike the injunctive claim, mootness is not an issue here.  A change to the law does not moot a claim for damages even if it moots other claims.  *See Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 698 (6th Cir. 2020).  This is especially true for qualified immunity where we look at the law "as it existed at the time" of the challenged "official behavior."  *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir. 1985); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).  So we decide the issue here.

A right is "clearly established" if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted). And although the plaintiff need not provide "a case directly on point," the "existing precedent must have placed the . . . question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The point is to give the official "fair notice" that his actions violated the plaintiff's rights. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021). For this reason, we look to the law at the time the official acted. *See Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

And here, at the time Fling acted, the compliance rule only regulated commercial speech. *See* Ohio Rev. Code § 5516.01(A) (2007). And Kenjoh made only one challenge to the regulation—that it was a prior restraint. So, to succeed, Kenjoh must show that prior restraint applied to commercial speech. But Kenjoh fails to make this showing. It cites no cases from this Court holding that prior restraint applies to commercial speech. If anything, we have strongly suggested that prior restraint never applies to commercial speech.[6] *See Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 532-33 (6th Cir. 2012). In *Discount Tobacco*, the FDA required tobacco companies to get approval before advertising their products as healthy. *Id.* at 532. Like Kenjoh, the tobacco companies argued this was a prior restraint. *Id.* We disagreed. *Id.* We noted that the Supreme Court "on several occasions 'observed that commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it.'" *Id.* (quoting *Central Hudson Gas & Elec. Corp. v. Public Servs. Comm'n*, 477 U.S. 557, 571 n.13 (1980)). And we held that the prior restraint doctrine did not apply to the commercial speech in that case. *Id.* So, in the face of *Discount Tobacco*, Kenjoh fails to show that the question was beyond debate.

---

[6]Kenjoh argues that *Discount Tobacco* is distinguishable because it dealt with potentially misleading advertising. Although we are skeptical of this argument, we need not decide whether *Discount Tobacco* should be read so narrowly. This is because even if Kenjoh's reading is right, the most it does is show that the law is not clearly established that prior restraint applies to commercial speech. But that is not the burden that Kenjoh has to meet. Rather, Kenjoh has to show that the law was clearly established that the prior-restraint doctrine did apply. So Kenjoh would still fail to meet its burden.

Kenjoh attempts to get around this by generalizing its right. It asserts that Fling violated its right to speak through billboards and argues that this is a clearly established right. But that conflicts with Supreme Court precedent. The Court has warned against framing a right at such a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (calling this a "longstanding principle"). Or else, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Crawford*, 15 F.4th at 765-66 (quoting *White*, 137 S. Ct. at 552).

Instead, we define the right "in light of the specific context of the case." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021). So the inquiry is not whether Fling violated Kenjoh's right to free speech. That is too general. Rather, it is whether stalling permit applications for advertising billboards counts as an unconstitutional prior restraint. But, to answer this, we must first answer if prior restraint even applies to commercial speech. And as explained above, it does not.

Finally, Kenjoh argues that it is generally inappropriate to grant qualified immunity at the motion to dismiss stage. Kenjoh is correct that some of our caselaw has suggested a presumption against granting qualified immunity on a motion to dismiss. But we recently clarified the scope of this "presumption" in *Crawford*. *See* 15 F.4th at 765.

As we said, any presumption only has bite when the "clearly established" inquiry turns on "case-specific details that must be fleshed out in discovery." *Crawford*, 15 F.4th at 765. But if the complaint is "distinguishable from our past cases on its face," it will not survive a motion to dismiss. *Id.* at 766. Kenjoh's complaint need not proceed to discovery. After all, it is easily distinguishable from our past caselaw. That is because it asks us to apply the prior restraint doctrine to commercial speech, which we haven't done.

All in all, we will do here what the Supreme Court did in *al-Kidd*. We will "affirm[] the application of qualified immunity" because it is "apparent from the complaint that the law was not clearly established because 'not a single judicial opinion' ha[s] held the official's action unconstitutional." *Id.* (quoting *al-Kidd*, 563 U.S. at 741).

**V.**

For these reasons, we **VACATE** and **REMAND** the district court's opinion on the injunctive claim but **AFFIRM** on damages.