NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0282n.06
Case No. 23-5053

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| AMERICAN COLLEGE OF PEDIATRICIANS and CATHOLIC MEDICAL ASSOCIATION, on behalf of its members, | ) ) ) ) | Jun 27, 2024 KELLY L. STEPHENS, Clerk |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| | ) | OPINION |
| XAVIER BECERRA, et al., | ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

**PER CURIAM.** Two organizations representing healthcare professionals sued to prevent the Department of Health and Human Services from enforcing administrative rules related to gender-identity discrimination in healthcare. Concluding that none of the organizations' members had standing, the district court dismissed the complaint. The organizations appealed. In the meantime, as all parties acknowledge, subsequent agency action has mooted appellants' claims. Accordingly, we dismiss the appeal for lack of jurisdiction.

I.

This appeal addresses federal rules prohibiting gender-identity discrimination in "any health program or activity" covered under Section 1557 of the Affordable Care Act. *See* 42 U.S.C. § 18116(a). Those rules have a somewhat complicated history. In 2016, HHS issued a rule

interpreting Section 1557 to prohibit discrimination on the basis of gender identity in covered health programs or activities. *See* 81 Fed. Reg. 31,375-01, 31,467 (May 18, 2016). In the ensuing eight years, the rule has been substantially modified, sometimes by court order, other times by a different presidential administration's attempt to repeal the rule's gender identity provisions. *See Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 946 (N.D. Tex. 2019); 85 Fed. Reg. 37,160-01, 37,178 (June 19, 2020); *Walker v. Azar*, 480 F. Supp. 3d 417, 429–30 (E.D.N.Y. 2020); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 37–42 (D.D.C. 2020). Eventually, the current administration, following the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), issued a "Notification of Interpretation and Enforcement" declaring that HHS interprets Section 1557 as prohibiting gender-identity discrimination. 86 Fed. Reg. 27,984-02, 27,984 (May 25, 2021). This 2021 notice, however, did not purport to replace or modify the 2016 rule.

The Catholic Medical Association (CMA) and the American College of Pediatricians (ACPeds) are organizations consisting of healthcare professionals, at least some of whom object to performing medical procedures related to gender transitions. Alleging some uncertainty regarding the status of HHS rules implementing Section 1557, CMA and ACPeds sued HHS to prevent the agency from enforcing its "gender identity mandate"—the combined effect of the 2021 Notification of Interpretation and Enforcement and parts of the 2016 rule remaining in force— against their members. The district court dismissed the complaint after concluding that CMA and ACPeds lacked standing to challenge HHS's authority to enforce Section 1557. As the district court saw things, none of CMA or ACPeds's members faced a credible threat of an enforcement action for a potential violation of Section 1557's prohibitions on gender-identity discrimination.

2

Noting the overlap between the evaluation of standing and ripeness in pre-enforcement challenges, the district court also concluded that plaintiffs' claims were "unripe as much as they lack standing."

While this appeal was pending, HHS wiped the slate clean on Section 1557. On May 6, 2024, it promulgated a new rule to replace its prior interpretations of Section 1557. 89 Fed. Reg. 37,522 (May 6, 2024). As a result, the interpretation CMA and ACPeds challenge will no longer remain in force. We asked the parties for supplemental briefing to address whether the new rule affects the justiciability of the appeal. All parties now agree that the 2024 rule renders CMA and ACPeds's challenges moot. We agree.

II.

A. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (citation and quotation marks omitted). If we determine that we lack jurisdiction over a case, we "cannot proceed at all" and instead must simply "note the jurisdictional defect and dismiss the suit." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998).

Mootness is one such jurisdictional defect. A case becomes moot when the issues presented no longer constitute a live dispute amounting to a case or controversy. *Already*, 568 U.S. at 91. That is the case, for example, where "events occur during the case, including during the appeal, that make it 'impossible for the court to grant any effectual relief whatever to a prevailing party.'" *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Here, the law that is the basis for the complaint has been replaced by a new law during the case's pendency. If the challenged law "has been sufficiently altered so as to present a substantially different

3

controversy from the one the District Court originally decided," the case is moot. *Green Party of Tennessee v. Hargett*, 700 F.3d 816, 823 (6th Cir. 2012) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993)).

That is the case here. All parties agree that HHS's promulgation of the 2024 rule moots CMA and ACPeds's claims. The new regulations largely take effect in a few weeks, but no party suggests that there is a credible threat of enforcement of the old rules in the meantime. So our focus is on the effect of the new rules on CMA and ACPeds's complaint. As the parties note, the 2024 rule is substantially different from prior rules implementing Section 1557. What is more, HHS is implementing the rule using regulatory procedures that differ from those challenged in the complaint. Due to these developments, "there is no live controversy for us to consider." *United States v. City of Detroit*, 401 F.3d 448, 451 (6th Cir. 2005); *Nat'l Ass'n of Home Builders v. U.S. Small Bus. Admin.*, No. 21-1765, 2023 WL 192239, at \*1 (6th Cir. Jan. 13, 2023) (order).

CMA and ACPeds, we acknowledge, failed in the district court due to a lack of standing and ripeness, issues they reassert on appeal. Issues of standing, ripeness, and mootness all implicate this court's jurisdiction, and we may "address jurisdictional issues in any order we choose." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023) (citation omitted). On that basis, we decline to review the district court's conclusion that plaintiffs lacked standing or ripeness at the time their complaint was filed due to the universal agreement that the dispute has now become moot.

One final point bears mention. An exception to the mootness doctrine is the principle of voluntary cessation. In a nutshell, voluntary cessation prevents a defendant from strategically mooting a claim by ending his unlawful conduct once sued and then "pick[ing] up where he left off" after the case is dismissed. *Already*, 568 U.S. at 91. Numerous factors, however, weigh

4

against invoking that exception here. One, neither CMA nor ACPeds argue that the doctrine applies. *See Detroit*, 401 F.3d at 451 n.1. Two, there is no evidence that HHS intends to rescind the 2024 rule. *See Kentucky v. Yellen*, 54 F.4th 325, 341 (6th Cir. 2022). Because HHS promulgated the 2024 rule through a multiyear notice-and-comment process, we see little basis for applying the voluntary-cessation doctrine to preserve the justiciability of this case. *Id.* We therefore lack jurisdiction over the appeal due to the case's mootness, and thus dismiss the appeal.

B. Invoking *United States v. Munsingwear, Inc.*, CMA and ACPeds ask us to vacate the district court's order dismissing the complaint. 340 U.S. 36, 39 (1950). Despite declining to do so in that case, *Munsingwear* observed that when a case becomes moot by "happenstance," it is sometimes appropriate for an appellate court to vacate the lower-court judgment out of fairness to the losing party below, to "clear[] the path for future relitigation." *Id.* at 39–40. Whether to vacate a lower court's moot order is a matter of equitable discretion. *Mktg. Displays Int'l v. Shaw*, 93 F.4th 967, 971 (6th Cir. 2024). We assess three factors when deciding whether to do so: (1) whether a party has asked for vacatur; (2) whether the order will have a preclusive effect on subsequent litigation; and (3) whether the party asking for vacatur played a role in mooting the case. *Id.* The second factor, often deemed the "most important[]," disposes of today's vacatur inquiry. *See id.*

We need not vacate the district court's order because "there's no chance that the challenged portion of the district court's order will have a preclusive effect" on CMA or ACPeds. *Id.* at 972. The district court dismissed their complaint without prejudice for lack of standing. True, dismissals based on a lack of standing or ripeness can have a preclusive effect on subsequent litigation. *See* 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4436 (3d ed. June 2024 Update). But here, there is no threat of such preclusion. The district

court assessed whether CMA and ACPeds's members faced a credible threat of enforcement when they filed their complaint in 2021. It conducted that analysis against the backdrop of a soon-to-be rescinded regulatory regime. The district court's decision, therefore, would have no preclusive effect on a later challenge to current rules implementing Section 1557.

What is more, were there to be future litigation, any assessment of whether HHS will enforce Section 1557 against CMA or ACPeds must necessarily consider the fact that HHS promulgated the current rule. In other words, even if HHS or a court were to repeal the 2024 rule and reinstate the law exactly as it existed in 2021, those actions would inform a court's assessment of whether appellants' members face a credible threat of an enforcement action. Put differently, HHS's actions since 2021 have caused the facts and law relating to Section 1557 to change significantly since CMA and ACPeds filed their complaint. As those changes will be relevant to any future standing or ripeness analysis, a court will never face the same "jurisdictional issue litigated" previously in the district court. *See Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999); *see also Shaw v. Merritt-Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir. 1977) (noting that a dismissal for lack of jurisdiction is preclusive only when the subsequent suit involves "essentially the same claims, citing the same jurisdictional basis"). Accordingly, the district court's order will not have a preclusive effect on CMA or ACPeds in any hypothetical future litigation. Thus, we decline to exercise our equitable discretion to vacate the district court's order.

\* \* \* \* \*

Because appellants' claims are now moot, we dismiss the appeal for lack of jurisdiction.

6