RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ANDREA BOXILL,

        *Plaintiff-Appellant*,

    *v.*

JAMES P. O'GRADY; CARRIE E. GLAEDEN; JAMES E. GREEN; EMILY SHAW; MICHAEL T. BRANDT,

        *Defendants-Appellees*.

No. 18-3385

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00126—Michael H. Watson, District Judge.

Decided and Filed:  August 16, 2019

Before:  BOGGS, KETHLEDGE, and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Michael Garth Moore, LAW OFFICES OF MICHAEL GARTH MOORE, Columbus, Ohio, for Appellant.  Linda L. Woeber, Anthony P. McNamara, MONTGOMERY, RENNIE & JONSON, Cincinnati, Ohio, Paula J. Lloyd, Pamela J. Gordon, COLUMBUS CITY ATTORNEY'S OFFICE, Columbus, Ohio, for Appellees.

——————————————

**OPINION**

——————————————

JANE B. STRANCH, Circuit Judge.  Andrea Boxill brought this suit against four Ohio judges and a court administrator at Ohio's Franklin County Municipal Court (FCMC).[1]  She makes several claims under 42 U.S.C. § 1983, including First Amendment retaliation, civil conspiracy, and creation of a hostile work environment.  The district court dismissed her claims.  We **AFFIRM** in part and **REVERSE** in part.

## I. BACKGROUND

Boxill worked at FCMC as its Specialty Dockets Coordinator.  Four of the Defendants below—Michael Brandt, Carrie Glaeden, James Green, and James O'Grady—were state court judges at FCMC.  The remaining Defendant, Emily Shaw, was FCMC's Court Administrator.

Boxill alleges that "the Defendants . . . formulated a concealed plan and policy that female FCMC employees asserting complaints about abusive and discriminatory treatment at the hands of Judges would be discouraged and intimidated into silence."  Although she says this plan originated in 2007, her complaint does not identify any abusive treatment directed at her until November 2011, when O'Grady "began making hostile comments" that "mirrored sexist and racist allusions [he] had directed at [her] when he had been Bailiff" at the same courthouse in the past.  She also claims that Brandt was "hostile and intimidating to [her] personally" around the same time.

According to the complaint, Boxill reported her "ongoing harassment" to administrators and judges at FCMC—including Green and Shaw—several times between 2011 and 2013.  She alleges that "[n]o administrator or Judge acted on these reports, but each discouraged [her] from action."  In April 2013, the "Defendants began removing [her] responsibilities and diminishing [her] abilities to function as coordinator."  Sometime thereafter, she "learned that Defendants

---

[1]Boxill originally named FCMC as a defendant, but her amended complaint made no claims against FCMC.  In its opinion, the district court noted that Boxill had not formally withdrawn FCMC as a defendant and dismissed FCMC from the case.  Boxill does not challenge that dismissal.

had given a male subordinate a $14,000.00 per year increase in salary with no commensurate consideration of her contributions."

In March 2014, Scott VanDerKarr—a judge at FCMC who was not named as a defendant—drafted a letter to Brandt (copying Shaw and Glaeden) about O'Grady's behavior. Boxill does not provide the contents of VanDerKarr's letter, but she suggests that it "reported O'Grady's creation of a hostile work environment." After Brandt reviewed a draft of VanDerKarr's letter, he directed Shaw to tell VanDerKarr to "tone it down." It was Shaw who then wrote a new draft of the letter. This revised draft expressed concern that, "if left unaddressed, Judge O'Grady's behavior m[ight] result in future litigation that could subject the Court to liability, possibly for the creation and continuation of a hostile work environment, and the payment of damages."

Boxill alleges that "the Defendants knew" this letter was meant to "memorializ[e] complaints made" by her against O'Grady. A week after Shaw wrote the letter, Boxill was "formally demoted by Defendants." She claims that O'Grady then "recruited 'a team of Judges' to monitor [her] and her staff and frankly announced that he was 'targeting' Specialty Docket staff." The Defendants "began bypassing [her] on issues that were hers to address, and going directly to the Caucasian male subordinate who lacked her experience and qualifications." She eventually resigned in August 2014.

Boxill later filed this suit. Her complaint alleges that (1) each Defendant retaliated against her in violation of the First Amendment, § 1983, and § 1981, (2) the Defendants conspired to retaliate against her, and (3) each Defendant contributed to a hostile work environment at FCMC. The district court dismissed her claims, and she now appeals.

## II. ANALYSIS

### A. Jurisdiction

Before reaching the substance of Boxill's complaint, we must decide whether we have jurisdiction to hear this appeal. In dismissing Boxill's complaint, the district court stated:

> Defendants' motion to dismiss is GRANTED.  FCMC is dismissed with prejudice as not *sui juris*.  Plaintiff's § 1981 claims of race discrimination against the individual Defendants are dismissed with prejudice.  Plaintiff's § 1983 claims, however, are dismissed without prejudice for failure to state a claim.

The key distinction here is that Boxill's claims against FCMC and her § 1981 claims were dismissed *with* prejudice, but her § 1983 claims—which comprise the majority of the claims in her complaint—were dismissed *without* prejudice for failure to state a claim.

Under 28 U.S.C. § 1291, we have jurisdiction over "final decisions of the district courts of the United States."  When a district court "dismisses an *action* without prejudice . . . the order is final and appealable." *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617 (6th Cir. 2008) (emphasis added).  But when a district court dismisses only the plaintiff's *complaint* without prejudice, the dismissal is ordinarily not final. *Id.*  To determine whether the district court intended to dismiss the entire action or only the complaint, we first examine the language of the dismissal order.  If that language is "not clear," then "appellate jurisdiction is also not clear." *CompuServe Inc. v. Saperstein*, 172 F.3d 47, at *3 (6th Cir. 1999) (unpublished table opinion). The best practice for a district court, then, is to make its intention to dismiss an entire action (or not) clear in its dismissal order.**[2]**

Although the district court here did not plainly state its intention in the dismissal order, the clerk of court later entered a judgment dismissing all of Boxill's claims.  That judgment included a checked box next to the statement: "This action was decided by the Court without a trial or hearing."  The clerk of court's reference to the "action," rather than the complaint, likely indicates that the district court's order was final.  And even if the clerk of court's submission does not alone resolve the jurisdictional question, Boxill has done so on appeal.  In her supplemental briefing, she confirms that her decision to "appeal signaled her intent to 'stand' on the dismissed complaint." *See Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845–46 (6th Cir. 2007) (finding judgment was final in part because the plaintiff "intended to 'stand' on the dismissed complaint").  Considering the judgment's reference to dismissal of the

---

**[2]***See, e.g., Moore v. Rees*, 138 F. Supp. 3d 860, 872 (E.D. Ky. 2015) (stating that "this action is DISMISSED and STRICKEN from the Court's docket . . . [and] this is a final and appealable Order and there is no just cause for delay").

"action" and the plaintiff's express intention to stand on her dismissed complaint, we find that the district court's dismissal order was final and appealable under § 1291.

**B. Dismissed Claims**

Turning to Boxill's complaint. We review the district court's dismissal of Boxill's claims de novo and allow those claims to proceed only if they "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the complaint need not contain "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. That means "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.[3]

### 1. First Amendment Retaliation

We begin with Boxill's First Amendment retaliation claims. Retaliation under § 1983 requires the plaintiff to show that "(1) [she] engaged in constitutionally protected conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [her] protected conduct." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Speech is constitutionally protected when it touches on "a matter of public concern," which includes speech that can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

Boxill's complaints of gender and race discrimination qualify as protected speech. *See, e.g., Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001) ("[I]t is well-settled that allegations

---

[3]Boxill incorrectly states the pleading requirements of Rule 12(b)(6). Relying on citations that substantially predate the *Iqbal*/*Twombly* pleading standard, she proposes that we cannot dismiss her complaint unless we find that she "can prove no set of facts in support of [her] claims that would entitle [her] to relief." This standard was announced over 60 years ago in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and it was abandoned over a decade ago. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007) (noting "*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough," and concluding that "this famous observation has earned its retirement").

of sexual harassment[] . . . are matters of public concern."); *Connick*, 461 U.S. at 146 ("[I]t is clear that her statements concerning . . . allegedly racially discriminatory policies involved a matter of public concern."). And the adverse actions alleged by Boxill—which include a formal demotion and reduction in her job responsibilities—would deter a person of ordinary firmness from engaging in that speech. *See, e.g.*, *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 303 (6th Cir. 2012) ("The term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote." (quoting *Handy–Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir. 2012))).

Boxill has nevertheless failed to state a plausible retaliation claim against Brandt, Glaeden, Green, or Shaw. These allegations suffer from the same flaw: Boxill does not state facts specific to those Defendants. Her claims rest on broad, conclusory allegations that the "Defendants" diminished her job responsibilities; but she offers no facts to support a reasonable inference that any of these Defendants individually took such an action, much less that he or she did so in response to Boxill's protected speech. Summary reference to a single, five-headed "Defendants" does not support a reasonable inference that *each* Defendant is liable for retaliation. *See, e.g.*, *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

Boxill's claims against O'Grady are more direct. She alleges that in 2014, O'Grady "announced that he was 'targeting' Specialty Docket staff," assembled a "team of Judges" to monitor her work, and "began bypassing [her] on issues that were hers to address." While these facts would support a reasonable inference that O'Grady took an "adverse action" against Boxill, they are not enough to state a retaliation claim; she must also allege that O'Grady's actions were "motivated at least in part by [her] protected conduct." *Wurzelbacher*, 675 F.3d at 583. And Boxill has offered no plausible, non-conclusory facts to show that O'Grady was even aware of

her complaints against him.**4** Without those facts, Boxill cannot demonstrate that O'Grady's adverse actions were motivated in part by her protected speech.

### 2. Civil Conspiracy

Boxill next claims that each Defendant conspired to retaliate against her. Civil conspiracy under § 1983 requires evidence of "an agreement between two or more persons to injure another by unlawful action." *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must plead enough facts to support a reasonable inference "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.*

Boxill's conspiracy claims fall short for the same reason her retaliation claims fail. Once again, her complaint offers no facts relevant to the individual liability of Brandt, Glaeden, Green, or Shaw. She alleges, for example, that "the Defendants formulated a concealed plan and policy that female FCMC employees asserting complaints about abusive and discriminatory treatment at the hands of Judges would be discouraged and intimidated into silence." But she states no plausible, non-conclusory facts to demonstrate that Brandt, Glaeden, Green, or Shaw joined this conspiracy, shared in the conspiratorial objective, and/or committed specific acts in furtherance of the conspiracy. Although she now claims that Brandt's and Shaw's alleged involvement in the drafting of the 2014 letter about O'Grady's behavior is evidence of their participation in the alleged conspiracy, this letter's open recognition of concerns about O'Grady's behavior would, if anything, undercut the claim that Brandt and Shaw worked to conceal complaints against him.

While her claims against O'Grady are more specific, Boxill still fails to allege that he was aware of her complaints against him. O'Grady could not have conspired to retaliate against Boxill on the basis of complaints he knew nothing about. *See Farhat v. Jopke*, 370 F.3d 580,

---

**4**Boxill does allege that the "Defendants knew" the letter drafted about O'Grady's behavior was "memorializing complaints made" by her. But again, this vague, conclusory reference to "the Defendants" is not enough to make a plausible showing that *O'Grady* was aware of her complaints.

599 (6th Cir. 2004) ("Without an unlawful action . . . Appellant cannot prove the elements required to support a claim for [civil] conspiracy.").

### 3. Retaliation Under § 1981

Boxill makes a final claim of retaliation against each Defendant under 42 U.S.C. § 1981.[5] The district court dismissed these claims because "§ 1981 does not provide a cause of action against state actors in their individual capacities." While that is true, plaintiffs may still bring § 1983 claims premised on violations of § 1981. *See, e.g., McCormick v. Miami Univ.*, 693 F.3d 654, 661–62 (6th Cir. 2012) ("[T]he more specific and express cause of action contained in § 1983 provide[s] a mechanism to address a violation of § 1981."). That is what Boxill did here—her complaint makes a claim "pursuant [to] 42 U.S.C. § 1983 to vindicate . . . her correlative rights under 42 U.S.C. § 1981."

Even though the district court erred in finding that Boxill could not use § 1983 as a vehicle to vindicate her rights under § 1981, her claim still fails. The elements of a retaliation claim under § 1981 are the same as those under Title VII. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). To survive dismissal, Boxill must allege that (1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). As explained, Boxill's complaint does not plausibly allege that any Defendant took an adverse action against her because of her protected speech.

---

[5]The sixth claim in Boxill's complaint is ambiguously titled "EQUAL PROTECTION AND SECTION 1981 RACE DISCRIMINATION/RETALIATION." Although this language could imply that Boxill intended to bring a claim of retaliation *and* discrimination under § 1981, on appeal she alleges only retaliation under that statute. To the extent Boxill ever intended to bring a discrimination claim under § 1981, she has forfeited her right to do so on appeal.

4.  Hostile Work Environment

Boxill's last claim is that each Defendant contributed to a hostile work environment at FCMC by making or condoning sexist and racist comments.[6]  We review § 1983 discrimination claims brought under the Equal Protection Clause using the same test applied under Title VII. *See, e.g., Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 917–18 (6th Cir. 2014).  To succeed, Boxill must allege that "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [her protected status], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act."  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).

Boxill, an African American female, satisfies the first element of this standard.  But she has failed to plead any non-conclusory facts showing that Glaeden, Green, Shaw, or Brandt knew about her alleged harassment and failed to act.  In fact, Boxill's claim about the letter circulated among the Defendants indicates that they took proactive steps to address O'Grady's behavior.  At any rate, Boxill makes only a vague reference to the Defendants' "facilitati[on]" of "a continuing hostile work environment."  That is not enough to state a plausible claim against any of these Defendants.  Nor is Boxill's conclusory allegation that Brandt was "hostile and intimidating to [her] personally."  *See, e.g.*, *White v. Coventry Health & Life Ins. Co.*, 680 F. App'x 410, 415 (6th Cir. 2017) (dismissing plaintiff's "naked assertions" that she "suffered from harassment, discrimination, intimidation, berating and a hostile work environment").

Boxill's hostile work environment claim against O'Grady, however, makes the following specific allegations.  She states that shortly after his election to the bench in 2011, "O'Grady began making hostile comments" that "mirrored sexist and racist allusions [he] had directed at [her] when he had been Bailiff" at the same courthouse in the past.  She later told VanDerKarr

---

[6]The district court liberally construed Boxill's complaint to state two discrimination claims: one for disparate treatment in employment and another for creation of a hostile work environment.  Boxill does not challenge the district court's dismissal of her disparate treatment claim, and any such claim is now forfeited. Regardless, her complaint does not allege that any similarly situated, non-protected co-workers at FCMC were treated differently.  *See Serrano v. Cintas Corp.*, 699 F.3d 884, 893 (6th Cir. 2012).

that O'Grady's conduct was "interfer[ing] with her ability to succeed in her work," though his behavior continued.  Eventually, in 2014, VanDerKarr drafted a letter—circulated among Brandt, Shaw, and Glaeden—"in which he reported O'Grady's creation of a hostile work environment" at the courthouse.  Shaw later "tone[d] [] down" this letter; but even the revised letter concluded "that, if left unaddressed, Judge O'Grady's behavior [might] result in future litigation that could subject [FCMC] to liability, possibly for the creation and continuation of a hostile work environment, and the payment of damages."  Boxill's complaint therefore plausibly alleges that (1) O'Grady made sexist and racist comments directed at her and others for years, (2) she reported to her superiors that O'Grady's harassment was interfering with her ability to work, and (3) this harassment was sufficiently severe and/or pervasive that judges and administrators at the courthouse felt it necessary to memorialize their concerns about his behavior in writing.  At the pleading stage, these allegations state a plausible hostile work environment claim against O'Grady.

### III.  CONCLUSION

We **REVERSE** the district court's dismissal of Boxill's hostile work environment claim against O'Grady and **AFFIRM** the district court's judgment in all other respects.  We **REMAND** for further proceedings consistent with this opinion.