NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0076n.06

Case No. 24-1317

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BEVERLY BIGGS-LEAVY, | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| LADEL LEWIS, | ) | |
|     Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

Before: WHITE, READLER, and MATHIS, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** While attending a city council meeting, Beverly Biggs-Leavy repeatedly spoke out of turn, in violation of council rules. To avoid further interruption, the presiding council member ordered that Biggs-Leavy be removed from the session. Biggs-Leavy now alleges that her removal violated the First Amendment. The district court dismissed the complaint with prejudice for failure to state a claim. We affirm.

I.

Biggs-Leavy campaigned to recall Flint city councilwoman Ladel Lewis from office. During the course of that campaign, Biggs-Leavy attended a council meeting chaired by Lewis. The meeting, suffice it to say, proved eventful. Remarks made during the public comment period elicited audible responses from attendees, prompting Lewis to call for order. Later in the meeting, another council member referenced a fellow member's absence due to a thirty-day suspension,

stating, "that's why he's . . . not here." R.1 at PageID 10. This comment prompted Biggs-Leavy to shout, "[o]h, he'll be back." *Id.* at PageID 10. Lewis informed Biggs-Leavy that this was "the third time [she ha[d] spoken out[,]" and that this was "[her] warning." *Id.* at PageID 10. Biggs-Leavy retorted, "[t]his is no third time." R.11-3 at PageID 120.

The two continued to yell back and forth. Eventually, Lewis told security officers that Biggs-Leavy "does not have the floor," and asked the officers to "please escort Ms. Beverly Biggs-Leavy out of the . . . room because she's in violation of the disorderly persons city code." *Id.* at PageID 121; *see also* Flint City Council Meetings, *081423-2-Flint City Council*, YouTube, at 1:06:38 (Aug. 14, 2023), https://www.youtube.com/live/QVbJuRdJzao?si= ebMwfksRPMRJMPzB [https://perma.cc/V35C-BNQM]; R.1 at PageID 11, 22. Here, Lewis seemingly was referencing the council's rule prohibiting disruptions. "Any person that persists in disrupting this meeting," the rule states, "will be in violation of [the] Flint City code" and "will be given one warning" before she is "removed." R.11-3 at PageID 119 (meeting transcript); *see also* R.1 at PageID 12, 22; *081423-2-Flint City Council*, *supra*, at 1:06:44. Consistent with Lewis's order, Biggs-Leavy was removed from the meeting.

Invoking 42 U.S.C. § 1983, Biggs-Leavy sued Lewis in her individual and official capacities, alleging Lewis's actions violated both the First Amendment and the Michigan Open Meetings Act, Mich. Comp. Laws § 15.261 *et seq*. Lewis moved to dismiss the complaint. The district court instructed Biggs-Leavy that she had twenty-one days to either file an amended complaint or respond to the motion to dismiss. Biggs-Leavy did neither. The district court eventually ordered her to show cause as to why the unopposed motion to dismiss should not be granted. Biggs-Leavy responded and requested leave to file an amended complaint. The district court gave her another six days to do so. The deadline passed without any filing from Biggs-

Leavy. At that point, the district court ordered briefing closed. Ruling on the unopposed motion, the district court dismissed the First Amendment claims with prejudice, for failure to state a claim, and the state-law claim without prejudice, for lack of supplemental jurisdiction. Biggs-Leavy appeals only the dismissal of her First Amendment claims.

II.

We review the district court's decision granting Lewis's Rule 12(b)(6) motion de novo. *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010). Drawing all reasonable inferences in Biggs-Leavy's favor, we ask whether her complaint states a plausible theory of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although we generally do not look beyond the pleadings in resolving motions to dismiss, an exception exists for record documents "referred to in the complaint" and "central to the claims contained therein." *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quotation omitted). Here, no party contests that a YouTube video of the council meeting and the city's disorderly person code were both referenced in the complaint and are central to Biggs-Leavy's claims. Accordingly, we may consider them in resolving Lewis's motion.

A. To the extent Biggs-Leavy seeks to hold Lewis liable in her individual capacity, absolute immunity forecloses those claims. It is well understood that a state or local legislator is immune from suit under § 1983 for "legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 365 (6th Cir. 2022). All agree that Lewis acted within the sphere of her legislative authority when she ordered Biggs-Leavy to be removed from the council meeting. As presiding officer, Lewis was overseeing the meeting's public comment period. And when she ordered Biggs-Leavy's removal, Lewis was enforcing the council's rules. *See Avila v. Witkowski*, 219 F. App'x. 62, 62

3

(2d Cir. 2007) (holding that a local legislator chairing a public meeting was entitled to legislative immunity for, among other things, asking a fellow legislator to leave); *cf. Hogan v. Township of Haddon*, 278 F. App'x 98, 104 (3d Cir. 2008) (holding that "[a] legislator's exercise of discretionary . . . powers are entitled to legislative immunity."). Lewis is thus entitled to absolute immunity.

Not so, says Biggs-Leavy. She claims an additional inquiry is warranted. Before assessing whether an act was legislative, she says, we must first ask if the act was "legitimate." According to Biggs-Leavy, that inquiry requires us to examine Lewis's "motive or intent." As she sees things, because Lewis's actions were motivated by animus, they were illegitimate, meaning immunity does not attach.

The rule is otherwise. When deciding if an action qualifies as legislative, we look only to "the nature of the act, rather than [to] the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). As a result, a "claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377. Accordingly, to the extent Lewis is being held liable in her individual capacity, those claims were properly dismissed.

B.   That leaves the claims regarding Lewis's official conduct as a council member. Although Biggs-Leavy sued Lewis in both her "personal and official capacities," we treat any claims for Lewis's official conduct "as analogous to a suit against the local entity." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 494 (6th Cir. 2020). To state a claim, Biggs-Leavy must show that her constitutional rights were violated, and that the violation resulted from a city custom or policy.

*Id.* As Lewis has conceded the second point, we focus only on the alleged constitutional violation. Biggs-Leavy argues her First Amendment rights were violated in two respects.

*Right of access and speech.* First up is a claim concerning Biggs-Leavy's speech and access rights. By way of background, the First Amendment generally protects speech as well as access to public proceedings. U.S. CONST. amend. I; *United States v. Kincaide*, 119 F.4th 1074, 1077 (6th Cir. 2024). But those rights are not without limits. *See, e.g.*, *Kincaide*, 119 F.4th at 1078 (referring to the right of access as a "qualified right"). When assessing if a restriction on speech is constitutional, we first consider the nature of the forum. *See Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518–19 (6th Cir. 2019). Under that rubric, a city council meeting is considered a limited public forum. *Id.* at 519. In that setting, the government may impose reasonable restrictions on the content of speech so long as the restrictions do not "discriminate against speech on the basis of viewpoint" and are "reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001) (internal quotation marks omitted). Relatedly, the government may place "limitations upon access" that "serve a legitimate governmental purpose" and are "rationally related to the accomplishment of that purpose." *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 560 (6th Cir. 2007) (quotation omitted). One such purpose is ensuring that official proceedings are "conducted in a quiet and orderly setting." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 n.18 (1980).

The council's rule of order—and its subsequent enforcement—meet these requirements. The rule applies regardless of the viewpoint expressed. It likewise serves a legitimate governmental purpose, acting to ensure the peaceful and orderly conduct of council meetings. *See Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F. 3d 427, 433 (6th Cir. 2009). As stated in her complaint, Biggs-Leavy interrupted the proceedings by shouting "he'll be back." R.1 at PageID

5

10. And when admonished by Lewis, she continued to "voice[] her objection." *Id.*; *081423-2-Flint City Council*, *supra*, at 1:06:03. In these ways, Biggs-Leavy's removal was tied to her failure to adhere to the rules and her continuing protests. Removal in these circumstances did not violate Biggs-Leavy's speech or access rights. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 198 (3d Cir. 2008) ("The right of free speech does not encompass the right to cause disruption [to a public proceeding] . . . .").

Biggs-Leavy offers two responses, neither of which persuades us. Although not entirely clear from the pleadings, she first seems to allege that the council's rule was enforced against her in an unconstitutional manner, in that she was removed for expressing a disfavored viewpoint while others with the opposing view were not. We do not think her complaint plausibly supports such a theory. Her allegations are thin. She states that, during the meeting, there had been a prior "outcry from the members in the public." R.1 at PageID 7. And her own comment, she adds, was not "the first time someone from the audience had interjected." *Id.* at PageID 10. But these allegations do not reveal specific speakers, the viewpoint of their speech, nor whether that speech occurred after warnings from the council. *See Hartman v. Thompson*, 931 F.3d 471, 480 (6th Cir. 2019) (finding no viewpoint discrimination when plaintiffs failed to identify a group with an opposing viewpoint who were allowed to protest while plaintiffs were removed). Nor does an as-applied challenge depend on subjective motive. *See Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) ("[An] as-applied [First Amendment] challenge focuses on the objective nature of the challenged restriction." (quotation marks and citation omitted)); *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 896 (6th Cir. 2021) ("[W]e hesitate to make First Amendment-related speculations on the hidden motives of legislative bodies." (quotation marks and citation omitted)). What is more, these allegations are at odds with the unchallenged record. Footage of the council

meeting reveals that no speaker interrupted the meeting to show support for Lewis, in other words, to present a view opposite that of Biggs-Leavy's. *See generally 081423-2-Flint City Council*, *supra*. For these reasons, Biggs-Leavy fails plausibly to allege any viewpoint discrimination.

Second, Biggs-Leavy claims that her removal was unreasonable because Lewis could have "ignored [her] comment" or ordered her to stay silent. R.1 at PageID 19. In her complaint, however Biggs-Leavy admits that after Lewis warned her, she verbally protested instead of remaining silent. The First Amendment did not require Lewis to give Biggs-Leavy unlimited chances to comply before being removed from a public meeting.

*Retaliation*. That leaves Biggs-Leavy's claim for free-speech retaliation. Back to her complaint. There, she alleges that Lewis retaliated against her "due to [her] efforts to have [] Lewis recalled and removed from her seat on the Flint City Council." R.1 at PageID 21. To prevail on her retaliation claim, Biggs-Leavy must plausibly allege that (1) she "engaged in a constitutionally protected activity," (2) Lewis took adverse action against her that caused an injury that would "chill a person of ordinary firmness," and (3) in taking such action, Lewis was motivated, at least in part, by Biggs-Leavy's exercise of her constitutional rights. *Paige*, 614 F.3d at 277 (quotation omitted).

Even assuming Biggs-Leavy meets the first two elements, her claim falters at the third. That is so because Lewis, the purported retaliator, had to be aware of the protected activity to establish a retaliation theory. *See Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (noting that there must be a causal connection between protected conduct and adverse action, and when assessing if such a connection exists, we look at the defendant's subjective motivation). After all, absent knowledge, there can be no associated retaliation. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (holding that when plaintiff failed to plausibly allege defendant knew of the

protected conduct, plaintiff could not demonstrate that any adverse action was motived by such conduct). Yet, at most, the complaint alleges merely that Biggs-Leavy's political activities were "no secret," inferring that it would be "reasonable to conclude" Lewis was aware of them. R.1 at PageID 5; 6; 21. This amounts to little more than speculation and conjecture regarding Lewis's subjective knowledge. *Id.* That is not enough to state a retaliation claim.

### III.

Finally, Biggs-Leavy challenges the district court's decision to dismiss her complaint with prejudice. She contends that the court erred in granting Lewis's "unopposed" motion to dismiss with prejudice as a "sanction" for Biggs-Leavy missing a filing deadline. We review the district court's decision here for an abuse of discretion. *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991); *Green v. City of Southfield*, 759 F. App'x 410, 416 (6th Cir. 2018).

No such abuse occurred. Look back at the sequence of events. Biggs-Leavy was given multiple chances to file a response to the motion to dismiss. Yet she missed both the initial twenty-one-day time frame to file as well as the six-day extension granted by the district court. At that point, the district court was entitled to proceed without Bigg-Leavy's response. *See Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 946 (6th Cir. 2020) ("[A] plaintiff's failure to respond to a defendant's motion to dismiss renders any objections to the motion waived for want of prosecution." (collecting cases)).

Contrary to Biggs-Leavy's assertion, the district court did not grant Lewis's motion "by default." Rather, the court assessed Biggs-Leavy's original complaint on the merits, viewing the facts in the light most favorable to her. In those ways, her "failure to respond in no way prevented the district court from properly considering whether [her] complaint sufficiently stated a claim for relief as a matter of law." *Pond v. Haas*, 674 F. App'x 466, 472–73 (6th Cir. 2016). Nor was the

district court required to give Biggs-Leavy another chance to amend her complaint before dismissing it with prejudice. *See Green*, 759 F. App'x at 417 (finding no abuse of discretion when the court carefully considered the complaint before granting an unopposed motion to dismiss).

*   *   *   *   *

We affirm the judgment of the district court.