NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0193n.06

Case No. 25-1833

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Apr 28, 2026

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| WILLIENARD BANKS, Trustee of the Willienard Banks Living Revocable Trust; AARON P. JACKSON, | ) ) ) | |
| Plaintiff-Appellants, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) ) | |
| CHARTER TOWNSHIP OF BLOOMFIELD, MICHIGAN; OAKLAND COUNTY ROAD COMMISSION; OLIVIA OLSZTRY-BUDRY; DENNIS KOLAR; RICK SAPORSKY; GARY PIOTROWICZ; DANI WALSH, | ) ) ) ) ) ) ) | OPINION |
| Defendant-Appellees. | ) | |

Before: SUTTON, Chief Judge; DAVIS and RITZ, Circuit Judges.

SUTTON, Chief Judge. Willienard Banks and Aaron Jackson own property in Chestnut Run, a residential subdivision located in Bloomfield Township, Michigan. In 2021, their properties began to flood intermittently due to broken pipes in a drain easement running beneath their land. Hoping not to pay for the costs of repairing the drain themselves, Banks and Jackson sued their town, the local road commission, and various officials, claiming their actions (and inactions) violated the federal and state takings clauses as well as other guarantees. The district court dismissed their complaint for failure to state a claim. We affirm.

## I.

Banks and Jackson bought adjacent lots in Chestnut Run Subdivision, owned and privately developed by Chestnut Run LP. The lots are located in Bloomfield Township, which is part of Oakland County. They both abut Bloomfield's Orange Lake and sit halfway within its floodplain. In 2021, both properties began to flood intermittently. Their yards grew soggy, and stagnant water brought unpleasant odors.

Banks and Jackson blame the local government for these problems. They allege that a 2019 road improvement project within the subdivision caused more water to enter a drain running beneath their properties. The drain takes runoff from sewers at the front of their properties to the water's edge of Orange Lake. Making matters worse, Banks and Jackson claim, the drain no longer works the way it should. Their expert found that "sediment should be cleaned out of the [drain] and the pipe should be . . . inspected and repaired." R.48-2 at 7.

In filing this lawsuit, Banks and Jackson claim that the local government is responsible for the problem and should repair the drain. They sued Bloomfield Township, the Oakland County Road Commission, and various county officials under § 1983, raising federal and state takings claims and an assortment of other federal claims. The defendants moved to dismiss the action under Civil Rule 12(b)(6). The court granted the motion.

## II.

We review the district court's Rule 12(b)(6) dismissal with fresh eyes. *Chen v. Hillsdale Coll.*, 150 F.4th 735, 741 (6th Cir. 2025). To survive a motion to dismiss, the complaint "must allege sufficient facts to support a plausible theory of relief" on each of their claims. *Id.* at 740. That requires the claimant to raise more than "conclusory allegations or legal conclusions

2

masquerading as factual conclusions." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (quotation omitted).

*Physical taking under the Federal Takings Clause*. The Fifth Amendment prohibits taking private property "for public use, without just compensation." U.S. Const. amend. V. A "physical invasion by [the] government [that] interferes with private property" amounts to a taking. *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 38 (2012). The prohibition applies to the States under the Fourteenth Amendment. *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017).

Banks and Jackson claim that Bloomfield and the County physically invaded their properties via the flooding in two ways: by undertaking the 2019 road-improvement project in Chestnut Run and by failing to maintain the pipes in the drain easement. We consider each theory in turn.

The road-improvement theory fails because a taking requires the government's action to cause the appropriation, and the appropriation must be the "intended or . . . foreseeable result" of its action. *Ark. Game & Fish*, 568 U.S. at 39. The "negligent infliction of injury on property does not by itself a taking make." *Bruneau v. Mich. Dep't of Env't*, 104 F.4th 972, 976 (6th Cir. 2024). The Court's decision in *Sanguinetti v. United States*, 264 U.S. 146 (1924), illustrates the point. Congress authorized the construction of a canal that failed to handle heavy rains, causing flooding of nearby properties. *Id*. at 147, 150. Even though the canal caused the flooding, the Court reasoned that a taking did not occur because the injury was not "reasonably [] anticipated by the government." *Id*. at 150.

Banks and Jackson face a similar problem, as their own evidence in the complaint confirms. Their expert noted that the road project made only "minor improvements to road drainage" and referred to the drain system within their properties as "defective" and in need of "repair[]" and

"clean[ing]." R.48-2 at 4, 7. Even if the 2019 project, rather than a broken drain system, caused the flooding, Banks and Jackson do not allege that Bloomfield or the county road commission realized or could have foreseen that road improvements would lead to this problem. In truth, their evidence suggests the opposite, as their expert faults the government for failing to investigate whether the drain could accommodate more water. Alleged negligence, without more, does not create a taking. The district court correctly rejected this theory as a matter of law. *See Bruneau*, 104 F.4th at 976.

As to their theory that Bloomfield Township appropriated their properties by failing to maintain the pipes in the drain easement, Banks and Jackson face a different problem. The pipes are not the government's property. Absent ownership, government has no obligation to fix property in the first instance. *See Ark. Game & Fish*, 568 U.S. at 38.

Michigan courts look to the "text of the easement" to determine ownership. *Little v. Kin*, 664 N.W.2d 749, 750 (Mich. 2003). The subdivision's "declaration of co[v]enants" reserves to Chestnut Run LP an "easement and right on, over and under the ground to erect, maintain and use . . . conduits, sewers, water mains and other suitable equipment for the conveyance and use of . . . water . . . at all locations as shown on the final plat." R.49-2 at 36, 40, 89, 93. The proprietor's certificate, which accompanies the plat, states that "the streets are for the use of the public," "the public utility easements are private easements," and "all other easements are for the uses shown on the plat." R.49-2 at 52, 105. The plat, in turn, identifies three types of easements: drain easements, sanitary sewer easements, and private easements for a public utility.

Nowhere does the plat identify Chestnut Run's drain easements as easements dedicated to the public or assigned to Bloomfield Township or the county. In contrast to Chestnut Run's roads, which are dedicated to the public, its sanitary sewer and drain easements are limited to "the uses

4

shown on the plat." R. 49-2 at 52, 105. The identified use for the easement beneath Banks and Jackson's lots—"drain"—gives no indication that any entity other than Chestnut Run LP possesses it. Other parts of the subdivision, notably, are explicitly reserved for the public. But the drain easement is not. Because Bloomfield Township and Oakland County lack a possessory interest in the easement, the damage resulting from its disrepair does not involve local government. It bears noting that Banks and Jackson haven't brought a claim against Chestnut Run LP.

Banks and Jackson claim that we may not look to the full plat and title work at this pre-discovery stage of litigation. But they referred to and quoted the documents themselves in their complaint. And they referred to the full documents in their reply brief on appeal. Plus, "public records" may be considered at the motion-to-dismiss stage. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quotation omitted). There is nothing wrong with considering these public documents, even though they now undermine rather than advance the plaintiffs' claims.

Banks and Jackson invoke *Montgomery v. Carter County*, which said that "all that is required for the taking to be considered for public use is a rational relationship to some 'conceivable public purpose.'" 226 F.3d 758, 765 (6th Cir. 2000) (quotation omitted). Because some of the water entering the drain comes from roads dedicated to the public, they add, the drain easement has a public purpose. That approach jumps the gun. In *Montgomery*, the Court asked whether Carter County, which claimed the plaintiffs' road as its own, did so for a "public purpose." *Id*. In this instance, Bloomfield and the county disclaim any interest in the drain easement, and the residents offer no contrary evidence. In the absence of an appropriation of land, there's no need to investigate the drain's purpose. An incidental benefit to the public does not, by itself,

5

dedicate land to the public. *See* Mich. Comp. Laws § 560.144(c), (d) (distinguishing land "dedicated to the use of the public" and "private easements" that support public utilities).

Banks and Jackson seek refuge in *Miner v. Ogemaw County Road Commission*, 625 F. Supp. 3d 640, 650 (E.D. Mich. 2022). But that case targeted the government's maintenance of a drain pipe on private property, not its refusal to maintain such a pipe. *Id.* The decision has been vacated anyway. *Miner v. Ogemaw Cnty. Rd. Comm'n*, No. 1:21-CV-11192, 2024 WL 7015778 (E.D. Mich. Jan. 23, 2024).

Banks and Jackson argue that, because Bloomfield repaired the pipes in their easement in 1999, it publicly dedicated the property for public use under common law. But such a common law dedication requires "an intention on the part of the owner to dedicate the land for public use." *City of Kentwood v. Est. of Sommerdyke*, 581 N.W.2d 670, 675 (Mich. 1998). The residents do not allege that Chestnut Run LP, the owner of the drain easement under the title documents, intended to dedicate the easement to the public.

Changing lanes, Banks and Jackson argue that the repair constituted a prescriptive easement, namely an easement obtained through open and continuous trespass. *McDonald v. Sargent*, 13 N.W.2d 843, 844 (Mich. 1944). That does not work either. They do not allege that Bloomfield's repair was a trespass. Nor do they explain how a single repair amounts to continuous use for over 15 years, as Michigan law requires. *See Marlette Auto Wash, LLC v. Van Dyke SC Props., LLC*, 912 N.W.2d 161, 167 (Mich. 2018).

*Regulatory taking under the Federal Takings Clause*. A regulatory taking "imposes regulations that restrict an owner's ability to use his own property," *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021), and in the process go "too far" in interfering with the property's use, *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). "[T]he government . . . effects a physical

6

taking," on the other hand, "when it occupies property . . . by recurring flooding as a result of [government action]." *Cedar Point*, 594 U.S. at 148. Banks and Jackson have alleged only the latter. They fail to point to a land-use restriction burdening their properties. While they have alleged that a Bloomfield official told them that closing the drain under their land would be illegal, they point to no regulation saying as much, and their own title documents suggest that doing so might violate Chestnut Run LP's declaration of covenants. A potential penalty for breaching their agreement with Chestnut Run LP, a private entity, would not constitute a regulatory taking.

*Michigan Takings Clause*. Banks and Jackson also ask for relief under the Michigan Takings Clause. *See* Mich. Const. art. 10, § 2. The Michigan Takings Clause, it is true, "offers broader protection than do [the Fifth and Fourteenth Amendments]." *AFT Michigan v. Michigan*, 866 N.W.2d 782, 794 (Mich. 2015). But Banks and Jackson did not argue in their opening brief that the Michigan takings clause "should be applied any differently than the federal Takings Clause in this case," leaving us in no position to "inquire further whether it would be proper to do so." *Id.*

*Other claims*. Banks and Jackson bring four other claims, all of which fail to state a claim for relief.

First, Banks and Jackson raise a federal procedural due process claim. To bring such a claim they must show that a state actor (1) "deprived [them] of a liberty or property interest" (2) without "process." *Phillips v. McCollom*, 788 F.3d 650, 653 (6th Cir. 2015). Banks and Jackson fail to show any deprivation by Bloomfield Township, the Oakland County Road Commission, or any public official. Even if the road improvement project marginally increased drainage through their land, their own expert attributed the flooding to broken pipes and sediment. Given that these pipes sit in an easement Bloomfield Township doesn't possess, there is no state action to anchor their claim. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351–53 (1974).

7

Second, they raise a federal substantive due process claim. They argue that Bloomfield Township has violated their "right to be free from conscience-shocking actions." *McIntosh v. City of Madisonville*, 126 F.4th 1141, 1149 (6th Cir. 2025) (quotation omitted). But "only the most egregious official conduct" will suffice. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quotation omitted). Neither Bloomfield Township's decision to improve public roads nor its decision not to repair equipment in a private easement in which it has no interest make that cut. The residents offer no caselaw to the contrary.

Third, Banks and Jackson raise a federal equal protection claim. But they have not alleged that any defendant has treated a similarly situated landowner differently—say, by repairing drains in private easements running through other private land. *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Without an adequate comparator, no cognizable claim exists. *Id.*

Fourth, Banks and Jackson allege that Bloomfield and Oakland County engaged in a civil conspiracy under § 1983, *see Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020), "to impose a servitude on . . . private properties" and to force them to pay for repairing the drain easement, Appellant's Br. 52. A civil conspiracy "requires evidence of an agreement between two or more persons to injure another by unlawful action." *Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotation omitted). This claim faces two hurdles, neither of which they surmount. One is that they do not allege facts demonstrating a coordinated plan. The other is that they do not allege facts showing any unlawful action in the first instance for the reasons already given.

We affirm.